UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
WILSON BARRERA and ABNER JORAM
ORREGO, individually and on behalf of all
other employees similarly situated,

                     Plaintiffs,

        -against-

FF and A RESTAURANT CORP. d/b/a
POLLOS A LA BRASA MARION, LUIS
FIGUEROA, ROSALBA AREVALO, and
ROBERT CORDOVA,

                     Defendants.
---------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
19 CV 2747 (RPK)

**POLLAK**, United States Magistrate Judge:

On May 9, 2019, plaintiffs Wilson Barrera and Abner Joram Orrego, individually and on

behalf of other similarly situated employees, commenced this action against defendants FF and A

Restaurant Corp., d/b/a Pollos A La Brasa Marion ("FF and A"), Luis Figueroa, Rosalba

Arevalo, and Robert Cordova (collectively, "defendants"). On June 28, 2019, plaintiffs filed an

Amended Complaint, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et

seq. ("FLSA"), and the New York Labor Law, in that defendants failed to pay proper minimum

wages, overtime wages, spread-of-hours premium, and failed to provide proper wage notices

under the New York Wage Theft Prevention Act.

On June 9, 2020, defendants filed a motion seeking permission to amend their Answer to

add state law Counterclaims of breach of fiduciary duty, faithless servant doctrine, conversion,

and unjust enrichment. Plaintiffs oppose the amendments, arguing that this Court lacks subject

matter jurisdiction over the proposed Counterclaims, and that even if there was jurisdiction over

the faithless servant doctrine claim, the motion to amend should be denied because that particular

Counterclaim fails to state a claim.[1]

For the reasons set forth below, the Court respectfully recommends that defendants' motion to amend be granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiffs allege that FF and A is a "Latin-style" restaurant engaged in interstate commerce, that employs more than ten employees and is located at 69-01 Roosevelt Avenue, Queens, N.Y. (Am. Compl.[2] ¶¶ 9-12). Defendants Figueroa, Arevalo, and Cordova are alleged to be owners, officers, directors or managing agents of FF and A, who own stock in the corporation and manage and make all business decisions relating to salaries and hours worked. (Id. ¶¶ 14-19).

Plaintiff Wilson Barrera alleges that from November 2005 until April 12, 2019, he was employed at FF and A as a waiter, working five days a week, approximately 55 hours per week. (Id. ¶¶ 7, 22-23). Plaintiff Barrera alleges that he was paid weekly in cash and paid at a fixed salary rate regardless of the number of hours he worked. (Id. ¶¶ 24, 25). He claims that from 2013 until 2014, he received $350.00 per week, and from 2015 until the end of his employment, he was paid $370.00 per week. (Id. ¶¶ 26, 27). He asserts that he was never paid overtime or spread-of-hours pay, nor did he receive paystubs or written notice of his rate of pay or that defendants were taking a tip credit in violation of the NYLL. (Id. ¶¶ 28-32).

Plaintiff Abner Joram Orrego alleges that he was employed by FF and A from about June

---

[1] On October 17, 2020, plaintiffs filed a motion to compel the defendants to appear for depositions. (ECF No. 32). Defendants opposed this motion on the grounds that it would be more efficient for depositions to occur after a decision was rendered on the instant motion. (ECF No. 33). Having now resolved the motion to amend, the Court Orders that depositions proceed.

[2] Citations to "Am. Compl." refer to the Amended Complaint, filed June 28, 2019, ECF No. 17.

2

2010 until March 29, 2019.  (Id. ¶ 33).  Originally hired as a busboy, plaintiff Orrego was

promoted to a waiter on or about January 1, 2014.  (Id. ¶¶ 33, 36).  According to the Amended

Complaint, Orrego worked as a busboy six days a week, approximately 56 hours a week, and

received $45.00 a day regardless of the number of hours worked.  (Id. ¶¶ 34, 35).  After his

promotion to waiter in 2014, plaintiff Orrego worked approximately 54 hours per week and was

paid $70.00 per day.  (Id. ¶¶ 36, 37).  As with plaintiff Barrera, plaintiff Orrego alleges that he

never received paystubs or written notice of his hourly rate of pay and tip credit deductions, nor

did he receive overtime or spread-of-hours compensation as required by the NYLL.  (Id. ¶¶ 38-

42).

 Plaintiffs assert claims on behalf of themselves individually and on behalf of all former

and current non-exempt employees employed by defendants at the restaurant for up to the last

three years who did not receive overtime, minimum wages, and spread-of-hours pay.  (Id. ¶¶ 46-

57).

 Defendants filed an Answer to the original Complaint on June 19, 2019.  Following the

filing of the Amended Complaint, defendants filed the instant motion to amend the Answer to

add certain Counterclaims against the plaintiffs.  Specifically, defendants allege in their proposed

Counterclaims that both plaintiffs were employed by defendant to "assist in managing the

restaurant and other employees working in the restaurant."  (Prop. Am. Ans.[3] ¶ 6).  Defendants

allege that the restaurant would close between 2:30 a.m. and 4:00 a.m. each night of the week

and after the closing, plaintiffs would invite others to come to the restaurant and eat and drink

with them.  (Id. ¶ 11).  According to defendants, the plaintiffs "would do this most nights that

they worked, often staying until the early morning becoming intoxicated."  (Id. ¶ 13).

---

[3] Citations to "Prop. Am. Ans." refer to the Proposed Amended Answer, submitted as Exhibit A to defendants' Motion to Amend the Answer, ECF No. 26-2.

Defendants allege that the alcohol plaintiffs would drink "was often taken" from the restaurant bar and not only would plaintiffs not pay for the alcohol, but they would offer it to their friends and other employees.  (Id. ¶¶ 14, 15).  It is further alleged that plaintiffs would "frequently" steal food and not pay for it and they would offer it to their friends as well.  (Id. ¶¶ 17, 18).  Defendants allege that they became aware of plaintiffs' behavior during the course of investigating the wage and hour claims in this case and they discovered that plaintiffs would cover their theft by taking payment from customers and cancelling the orders in the system.  (Id. ¶¶ 20-22).  Finally, defendants allege that plaintiffs committed credit card fraud by charging tip amounts to customer credit cards which were later disputed.  (Id. ¶¶ 23-25).

 Defendants seek to amend their previously filed Answer to add a Counterclaim for breach of fiduciary duty (Claim I); a Counterclaim under the faithless servant doctrine for misappropriating food, alcohol and money, and committing credit card fraud (Claim II); a Counterclaim for conversion (Claim III); and a Counterclaim for unjust enrichment (Claim IV).  Defendants seek an order of disgorgement and restitution.


DISCUSSION

A.   Legal Standard for Motions to Amend an Answer

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, once a response to a complaint has been filed, a defendant may amend the answer "only with the opposing party's written consent or the court's leave."  As the court in Monahan v. N.Y. City Dep't of Corrections noted, "Rule [15] reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated and 'mere technicalities' should not prevent cases from being decided on

4

the merits." 214 F.3d 275, 283 (2d Cir. 2000) (citations omitted), cert. denied, 531 U.S. 1035 (2000); see also Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (noting that "the stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim").

Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), the decision whether to grant a defendant's motion to file an amended answer remains within the court's discretion, see Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995), and an amendment may be prohibited where there has been bad faith or dilatory motives, where the amendment would be futile, or where the amendment would cause undue delay or undue prejudice to the opposing party. See Foman v. Davis, 371 U.S. at 178, 182 (1962); Zahra v. Town of Southold, 48 F.3d at 685; John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198 (2d Cir. 1989).

It is customary in the Second Circuit to grant leave to amend "in the absence of a showing by the non-movant of prejudice or bad faith." Block v. First Blood Assocs., 988 F.2d at 350. Courts consider both the lack of prejudice to plaintiffs and the principle that amendments are favored in order "to facilitate a proper decision on the merits," Conley v. Gibson, 355 U.S. 41, 48 (1957). However, courts have denied leave to amend when the opposing party's ability to litigate the merits of its case would be prejudiced if the amendments were allowed. Thus, error has been found when a party was allowed to amend an answer to plead a statute of limitations defense when, had the defense been pleaded earlier, the plaintiff could have instituted suit in another jurisdiction in which its claim would not have been barred. See, e.g., Strauss v. Douglas

Aircraft Co., 404 F.2d 1152 (2d Cir. 1968); Ricciuti v. Voltarc Tubes, Inc., 277 F.2d 809 (2d Cir.

1960).


    B.   The Parties' Arguments

      Defendants seek to amend their Answer to add counterclaims based on information

allegedly obtained from other employees that plaintiffs were actively and continuously stealing

food and alcohol from the restaurant without paying for it.  (Defs.' Mem.[4] at 1-5).  Defendants

seek to assert claims of breach of fiduciary duty, faithless servant doctrine, conversion, and

unjust enrichment.  (Id.)  They argue that plaintiffs would not be prejudiced by the amendment

because discovery is still in its early stages, there have been no depositions, and all of the

relevant documents are in defendants' possession.  (Id. at 7-8).

      Defendants argue that, under New York law, an employee-employer relationship is a

fiduciary one, and that plaintiffs, as employees, owed their employer a fiduciary duty which they

breached by stealing food and alcohol, by cancelling customers' orders in order to keep the

money, and by committing credit card fraud using defendants' payment system.  (Id. at 8).

Defendants argue that in addition to stating a plausible claim of breach of fiduciary duty, they

have alleged a plausible breach of the faithless servant doctrine, because plaintiffs provided food

and drinks to their friends and did not ring them up.  (Id. at 8–9 (quoting Pawlowski v. Kitchen

Expressions, Inc., No. 17 CV 2943, 2017 WL 10259773, at *3 (E.D.N.Y. Dec. 15, 2017) (stating

that "[t]o make out a faithless servant claim, an employer must allege that its employee breached

his duty of loyalty by taking some action against the employer's interest")).  Finally, defendants

---

[4] Citations to "Defs.' Mem." refer to Defendants' Memorandum of Law in Support of Plaintiff's [sic] Motion for Leave to File an Amended Answer with Counterclaims, filed June 9, 2020, ECF No. 26-12.

contend that by taking defendants' food and alcohol without defendants' permission, plaintiffs are liable for conversion and unjust enrichment. (Id. at 10).

Plaintiffs oppose the counterclaims, arguing that the defendants have failed to demonstrate that the Court has subject matter jurisdiction over these claims. Plaintiffs argue that because the proposed state law counterclaims in this case arise out of after-hours conduct and do not relate in any way to defendants' pay policies, which are the underpinning of plaintiffs' wage and hour claims, the counterclaims are merely permissive and not compulsory. (Pls.' Mem. at 6).

C. Subject Matter Jurisdiction

1) Independent Jurisdiction Over Counterclaims

Rule 13(a) of the Federal Rules of Civil Procedure defines a compulsory counterclaim as a claim that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claims; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Under this definition, any counterclaim that is not compulsory is considered "permissive." Fed. R. Civ. P. 13(b). "[N]o independent basis of federal jurisdiction is needed for the court to adjudicate the ancillary issues . . . raised [by a compulsory counterclaim], if the main claim . . . presents a colorable federal issue." Markbreiter v. Feinberg, 09 CV 5573, 2010 WL 334887, at * 1 (S.D.N.Y. Jan. 29, 2010). By contrast, a permissive counterclaim is cognizable in federal court only if there is an independent basis of jurisdiction over it. Whether a counterclaim is compulsory or permissive depends on whether the counterclaim arises "out of the transaction or occurrence" from which the opposing claim arises. Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 467 (S.D.N.Y. 2008) (quoting

Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004)); Markbreiter v. Feinberg,

2010 WL 334887, at *1 (noting that the distinction between the two lies in the fact that a

compulsory counterclaim must "arise[] out of the same transaction or occurrence that is the

subject matter of the opposing party's claim").  In Jones v. Ford Motor Credit Co., the Second

Circuit instructed that:  "this Circuit has long considered this standard met when there is a logical

relationship between the counterclaim and the main claim.  Although the logical relationship test

does not require an absolute identity of factual backgrounds, the essential facts of the claims

must be so logically connected that considerations of judicial economy and fairness dictate that

all the issues be resolved in one lawsuit."  358 F.3d at 209 (internal citations, quotation marks,

and brackets omitted); see also Torres v. Gristede's Operating Corp., 628 F. Supp. 2d at 467

(holding that there must be a logical relationship between the main claim and the counterclaim

such that "the essential facts of the claims must be so logically connected that considerations of

judicial economy and fairness dictate that all the issues be resolved in one lawsuit").

Plaintiffs rely on the decision in Torres v. Gristede's Operating Corp.  to argue that the

counterclaims being proposed here, including the faithless servant claim, are not related to the

plaintiffs' wage and hour claims, except to the extent they arise out of the employer-employee

relationship. (Pls.' Mem. at 6 (citing Torres v. Gristede's Operating Corp., 628 F. Supp. 2d at

467)).  Under New York law, "[o]ne who owes a duty of fidelity to a principal and who is

faithless in the performance of his services is generally disentitled to recover his

compensation."  Phansalkar v. Andersen Weinroth Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003)

(internal quotation omitted).  Moreover, compensation paid to a faithless servant may be

recovered by the principal upon a showing "(1) that the employee's disloyal activity was related

to 'the performance of his duties,' and (2) that the disloyalty 'permeated the employee's service

in its most material and substantial part.'" Sanders v. Madison Square Garden, L.P., No. 06 CV 589, 2007 WL 1933933, at *3 (S.D.N.Y. July 2, 2007) (quoting Phansalkar, 344 F.3d at 200, 203).

In Torres, the court considered the plaintiff's wage and hour claims along with the proposed counterclaims and found that "Gristede's faithless servant counterclaims are clearly not compulsory; they are permissive." Torres v. Gristede's Operating Corp., 628 F. Supp. 2d at 467. Noting that the plaintiffs' wage-and-hour claims focused on Gristede's "chain-wide compensation practices," the court concluded that Gristede's faithless servant counterclaims were not related to any aspect of these practices. Id. Instead, the counterclaims were based on discrete allegations of misconduct, including allegations of sexual harassment and credit card fraud, that pertained only to two of the plaintiffs. Id. In concluding that the counterclaims were permissive and not compulsory, the Court found that the only possible connection between the overtime claims and the counterclaims was that they arose out of the same employer-employee relationship. Id. "This slender reed will not support a finding that the counterclaims are compulsory." Id. See also Williams v. Long, No. 07 CV 3459, 2008 WL 2388042, at *4 (D. Md. June 11, 2008) (determining that the only issue that was common to both the FLSA claims and the breach of contract, breach of fiduciary duty and invasion of privacy counterclaims was whether the plaintiff was an employee or not; "while plaintiffs' claims will focus on the factual issues of how many hours plaintiffs worked, and whether they were paid for that work, defendant's counterclaims would require extensive factual investigation into allegations of false representation, reliance, and emotional distress"). The Court in Torres also concluded that "the essential facts for proving the counterclaims and the [wage and hour] claims 'are not so closely

related that resolving both sets of issues in one lawsuit would yield judicial efficiency.'"  628 F. Supp. 2d at 468 (quoting Jones v. Ford Motor Credit Co., 358 F.3d at 209).

Defendants cite to the decision in Markbreiter v. Feinberg, 2010 WL 334887, as "[a] more appropriate and comparable situation." (Defs.' Reply Mem.[5] at 4).  In that case, plaintiff, a secretary or office manager to a physician, brought claims for unpaid overtime wages under the FLSA.  Markbreiter v. Feinberg, 2010 WL 334887, at *1.  The defendants filed a counterclaim seeking to recover compensation that defendants had previously paid to plaintiff for hours during which she allegedly was acting on behalf of competing physicians to attract defendants' patients. Id.  The court distinguished the circumstances from those in Torres, finding that in Torres, the complaint was based on company policies that allegedly applied across the board to a group of employees, and the counterclaim was based solely on one plaintiff's specific conduct, whereas in Markbreiter, the focus of the case was on this one employee and her relationship with the defendants.  Id.  The court found a "logical relationship" between the complaint in Markbreiter and the counterclaim in that "the entire case . . . necessarily involves the question whether plaintiff was doing what defendants hired her to do during the hours for which they paid her." Id.  Therefore, the Court found that the counterclaims were compulsory, and did not require an independent basis of jurisdiction.

Although defendants attempt to analogize the facts in the instant case to those in Markbreiter, the Court finds that there is a key distinction that suggests Torres is more applicable.  As in Torres, the plaintiffs in this case have alleged violations stemming from broad-based policies of not paying proper overtime and spread-of-hours wages, and failing to provide

---

[5] Citations to "Defs.' Reply Mem." refer to defendants' Memorandum of Law in Reply to Plaintiffs' Opposition to and Further Support of Defendants' Motion for Leave to File An Amended Answer with Counterclaims, dated June 30, 2020, ECF No. 29.

proper notices under the Wage Theft Prevention Act that apply not only to the two named

plaintiffs, but to other similarly situated individuals.  By contrast, the single plaintiff in

Markbreiter alleged claims personal to herself, and the court found that "[t]he focus of the entire

case [was] on the single employer-employee relationship" between the plaintiff and defendants.

Id.  Therefore, Torres is more instructive as to whether the proposed counterclaims share a

"logical relationship" with the plaintiffs' claims.

      The proposed counterclaims in this case are personal to the conduct of the individual

named plaintiffs, alleging that the two named plaintiffs stole food and liquor from the defendants

and altered credit card receipts.  The facts underlying these counterclaims do not relate to

"[d]efendants' payment policies writ large," but rather involve independent actions allegedly

taken by the individual plaintiffs.  See Turban v. Bar Giacosa Corp., No. 19 CV 1138, 2019 WL

3495947, at *4 (S.D.N.Y. Aug. 1, 2019) (finding that counterclaim containing allegations

personal to named plaintiff was "clearly permissive," not compulsory, in context of FLSA

collective action).  The discrete nature of these proposed counterclaims in the context of a

collective action, therefore, "is enough to undermine any claim of a 'logical relationship'" with

plaintiffs' allegations of class-wide overtime violations.  See id.  Therefore, the Court finds that

defendants' proposed counterclaims are permissive, not compulsory.  Since  the proposed

counterclaims arise under state law and there is no diversity between the parties, the Court lacks

an independent basis of subject matter jurisdiction over the proposed counterclaims.

      2) Supplemental Jurisdiction Over Counterclaims

      Even if the counterclaims are not compulsory, and even where the Court lacks an

independent basis for exercising subject matter jurisdiction over permissive counterclaims, as in

this case where the claims are based on state law, the Court must still determine whether the

counterclaims fall within the Court's supplemental jurisdiction.  Pursuant to 28 U.S.C. § 1367(a), the federal court has supplemental jurisdiction over "all other claims" in a civil action where the claims are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See Jones v. Ford Motor Credit Co., 358 F.3d at 213.  Counterclaims based on state law are part of the same case or controversy when they share a "common nucleus of operative fact" with the plaintiffs' claims.  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  As the Second Circuit explained in Lyndonville Savings Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000), a common nucleus of operative fact may be found where the "facts underlying the federal and state claims substantially overlap[]. . .or where presentation of the federal claim necessarily [brings] the facts underlying the state claim before the court."  See also United Mine Workers v. Gibbs, 383 U.S. at 725; Padilla v. Clovis Roche, Inc., No. 07 Civ. 267, 2007 WL 4264582, at *3 (N.D.N.Y. Nov. 30, 2007).

        Numerous courts have declined to exercise supplemental jurisdiction over claims involving an employee's misconduct, including theft, when the only relationship between the plaintiff's FLSA claims and the counterclaims were the plaintiff's employment.  See Chang v. Wang, No. 15 CV 4385, 2018 WL 1258801, at *5 (E.D.N.Y. Mar. 12, 2018);  Anwar v. Stephens, No. 15 CV 4493, 2016 WL 4468090, at *4 (E.D.N.Y. Aug. 3, 2016);  Laracuente v. Major Otis LLC, No. 15 CV 0155, 2016 U.S. Dist. LEXIS 64878, at *5 (E.D.N.Y. May 17, 2016);  Wilhelm v. TLC Lawn Care, Inc., No. 07 CV 2465, 2008 WL 640733, at *3 (D. Kan. Mar. 6, 2008) (dismissing state law counterclaims where the defendant had not "identif[ied] a more specific factual connection" between the FLSA claim and its state law counterclaims, relying "solely on its employer-employee relationship with plaintiffs to support supplemental

jurisdiction").  As the court in Wilhelm noted: "courts have rejected the notion that the employer-employee relationship single-handedly creates a common nucleus of operative fact between the FLSA claim and peripheral state law claims."  Wilhelm v. TLC Lawn Care, Inc., 2008 WL 640733, at *3) (citing Lyon v. Whisman, 45 F.3d 758, 762-64 (3d Cir. 1995) (holding that no common nucleus of operative fact exists and Article III bars supplemental jurisdiction where the employment relationship is the only link between the FLSA claim and state law claims)).

Nevertheless, in some instances, counterclaims in a FLSA action present sufficient factual overlap to support a court's exercise of supplemental jurisdiction.  In particular, courts look to whether the factual issues raised by the counterclaims would necessarily be contested in the underlying suit.  For example,  in Turban v. Bar Giacosa Corp., the court found that, despite the collective nature of that lawsuit, supplemental jurisdiction was justified over a counterclaim alleging the named plaintiff had padded his hours, because "[t]he existence and accuracy of such [time] records will be at issue in the litigation" in any event.  2019 WL 3495947 at *4. Accordingly, the Court will examine the facts underlying each proposed counterclaim to determine whether they present a common nucleus of operative fact sufficient to justify exercise of supplemental jurisdiction.

1) Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty are that a fiduciary relationship existed, that the fiduciary knowingly breached one of the duties imposed by that relationship, and that damages resulted.  Catskill Dev., L.L.C. v. Park Place Ent. Corp., 547 F.3d 115, 134 (2d Cir. 2008).  To satisfy the breach element, defendants allege that plaintiffs "breached their fiduciary duty by actively stealing" from defendants.  (Prop. Am. Ans. ¶ 27).

13

Defendants further allege that these actions "were adverse to" defendants' interests, and caused the defendants "to lose significant sums of money and resources." (Id. ¶ 28). Adjudication of this counterclaim will therefore entail an inquiry into the amount of money and resources allegedly stolen from defendants. In addition, to the extent that defendants allege that plaintiffs took food and beverages from the establishment which they and their friends allegedly consumed, this would require separate proof as to when, and how much was taken from the restaurant's inventory. Indeed, the facts as alleged by the defendants raise questions as to how much was taken from defendants, as opposed to being obtained from other sources. (Mot. at 3 (plaintiffs consumed beer purchased at local store); Prop. Am. Ans. ¶ 14 (the alcohol plaintiffs allegedly consumed "was often" -- but presumably not always -- taken from the restaurant)). The claims do not relate even indirectly to the number of hours worked or the pay received by plaintiffs, which are the core of plaintiffs' wage and hour claims; nor does this counterclaim proposed by defendants address or relate in any way to defendants' alleged failure to provide the proper wage notices required by New York law. As such, defendants cannot show that this counterclaim shares a common nucleus of operative fact with the claims already before the Court. Accordingly, the Court respectfully recommends that defendants' motion to amend as to Counterclaim I be denied

    2)  <u>Faithless Servant Doctrine</u>

      Under New York law, a faithless servant claim may be sustained under either of two legal standards: 1) where misconduct and unfaithfulness substantially violate the contract of service, or 2) where the agent acts adversely to his employer in any part of a transaction or fails to disclose an interest which would naturally influence his conduct. <u>Carco Group, Inc. v. Maconachy</u>, 383 F. App'x 73, 76 (2d Cir. 2010). A faithless servant forfeits the right to

14

compensation for services tainted by the faithlessness.  See Phansalkar v. Andersen Weinroth & Co., 344 F.3d at 200.

In Stefanovic v. Old Heidelberg Corp., defendants in an FLSA action asserted a faithless servant counterclaim on the grounds that the three plaintiffs had altered customer receipts in "multiple instances."  No. 18 CV 2093, 2019 WL 3745657, at *3 (S.D.N.Y. Aug. 8, 2019).  The counterclaim was accompanied by an affirmative defense alleging that the plaintiffs should forfeit compensation paid to them during the period when they altered the tips.  Id. at *2.  The court held that it had supplemental jurisdiction over the counterclaim because the FLSA claim and affirmative defense would necessarily bring the facts underlying the counterclaim before the court.  Id.

Here, defendants have alleged a pattern of misconduct extending over many hours that the plaintiffs were supposedly working.  (Prop. Am. Ans. ¶¶ 10, 11, 13).  Plaintiffs' alleged misconduct involved using the restaurant premises for personal recreational purposes rather than to serve customers, clean, or perform other assigned work.  (Id. ¶¶ 11, 15, 23).  As in Stefanovic, evaluating the plaintiffs' claims for unpaid work hours will necessarily require an examination of how many hours plaintiffs were actually working and performed their assigned duties, as opposed to engaging in other personal endeavors – namely, partying with their friends.  These allegations differ from those at issue in Torres v. Gristede's Operating Corp., where the court characterized the factual underpinnings of the counterclaims as "small beer," dealing with isolated instances of misconduct by two plaintiffs that imposed minimal damage on the employer.  628 F. Supp. 2d at 466.  Here, defendants have alleged persistent misconduct by the plaintiffs that deprived them of hours of the employees' labor, more akin to the pattern of misconduct alleged in Stefanovic.  Moreover, defendants propose to assert the faithless servant

15

defense as their Twenty-Fourth Affirmative Defense (Prop. Am. Ans. ¶ XXIV), creating a

"partial defense on a theory of recoupment or setoff."  See Stefanovic v. Old Heidelberg Corp.,

2019 WL 3745657, at *3 (quoting Henry v. Concord Limousine, Inc., No. 13 CV 0494, 2014

WL 297303, at *6 (E.D.N.Y. Jan. 24, 2014) (internal quotations omitted)).

For all of these reasons, the Court respectfully recommends  that the defendants' motion

to amend the answer as to Counterclaim II be granted.

3)  Conversion and Unjust Enrichment

Counterclaims III and IV rest on identical allegations – namely, that the plaintiffs "acted

to intentionally steal and misappropriate alcohol, food, and money" from defendants.  (Prop. Am.

Ans. ¶¶ 33, 35).  As with the breach of fiduciary duty counterclaim, these counterclaims do not

share a common nucleus of operative fact sufficient to justify the Court's exercise of

supplemental jurisdiction.

The elements of conversion under New York law are: "(1) the property subject to

conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control of

the property before its conversion, and (3) defendant exercised an unauthorized dominion over

the thing in question, to the alteration of its condition or to the exclusion of plaintiff's rights."  In

re Refco Sec. Litig., 759 F. Supp. 2d 301, 327 (S.D.N.Y. 2010).  Clearly, prevailing on this

counterclaim will require presentation of evidence regarding the existence, quantity, and value of

specific items allegedly taken by the plaintiffs, a dispute that shares no factual overlap with the

number of hours the plaintiffs worked or defendants' overtime pay practices.  An examination of

plaintiffs' allegations regarding defendants' pay practices will not require inquiry into the

defendants' inventory.  Cf. Nicholsen v. Feeding Tree Style, Inc., No. 12 CV 6236, 2014 WL

475355, at *4 (holding that supplemental jurisdiction over theft counterclaim was appropriate

because court would need to determine whether plaintiff stole a ledger recording employee work hours).

An unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012). It does not apply "where it simply duplicates, or replaces, a conventional contract or tort claim." Id. Defendants' proposed unjust enrichment allegation merely repeats verbatim the facts underlying the conversion counterclaim, making it duplicative of a conventional tort claim. (Prop. Am. Ans. ¶¶ 33, 35). Thus, even if the unjust enrichment counterclaim contained a common nucleus of operative fact with the underlying case, the counterclaim must be dismissed.

Accordingly, the Court respectfully recommends that the court decline to assert supplemental jurisdiction over defendants' proposed conversion and unjust enrichment claims and deny defendants' motion to amend as to those counterclaims.

D.   Failure to State a Claim

Plaintiffs also argue that Counterclaim II fails to state a claim because the plaintiffs did not receive a material benefit from a third party. (Pls.' Mem. at 9). Defendants contend that no third party is required, and point to cases where the faithless servant doctrine "has been interpreted to include employees stealing from customers or their employer." (Defs.' Reply at 6–7). Indeed, under New York law, a faithless servant claim may be sustained under either of two legal standards: 1) where misconduct and unfaithfulness substantially violate the contract of service, or 2) where the agent acts adversely to his employer in any part of a transaction or fails

17

to disclose an interest which would naturally influence his conduct.  Carco Group, Inc. v. Maconachy, 383 F. App'x at 76.  Neither of these standards require third party involvement. The Proposed Amended Answer alleges that the plaintiffs "acted to intentionally steal and misappropriate alcohol, food, and money" from defendants, in breach of their "duties of loyalty, fiduciary duties, and others," causing the defendants to lose significant sums of money.  (Prop. Am. Ans. ¶¶ 30–32 ).  These allegations suffice to assert either that plaintiffs engaged in "misconduct … substantially violating the contract of service" or that they "act[ed] adversely to [their] employer in any part of a transaction."  Therefore, if the court determines that it has jurisdiction over Defendants' Counterclaims, the Court respectfully recommends that leave to amend be granted as to Counterclaim II because it states a claim.

CONCLUSION

 The Court respectfully recommends that  defendants' Motion to Amend the Answer as to Counterclaim II be granted, but that the court deny the motion to amend as to Counterclaims I, III and IV.  Defendants are to submit an amended Answer no later than May 13, 2021.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

18

**SO ORDERED.**

Dated: Brooklyn, New York
     March 29, 2021

                                     /s/ Cheryl L. Pollak
                                   Cheryl L. Pollak
                                   Chief United States Magistrate Judge
                                   Eastern District of New York